Filed 12/19/22 In re S.D. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re S.D., et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B320239 (Super. Ct. No. 20JD-00179) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. Shaun D., Defendant and Appellant. | |

Shaun D. (father) appeals the juvenile court's order terminating parental rights to his minor children, S.D. and S.R.D., and selecting adoption as the permanent plan. (Welf. &

Inst. Code, § 366.26.)[1]  Father contends there was insufficient evidence that the children were likely to be adopted in a reasonable time because they had special needs and there was a legal impediment to adoption.  We affirm.

*Facts and Procedural History*

In October 2020, the San Luis Obispo County Department of Social Services (department) filed a dependency petition and removed two-year-old S.D. and 6-month-old S.R.D. from father and mother's care due to ongoing substance use by both parents, domestic violence, and neglect.

Father and mother have a significant history with the department.  Two of their older children were living with maternal grandmother in a legal guardianship.  S.D. was informally placed with maternal grandmother from December 2019 to July 2020.  The department provided father and mother voluntary family maintenance services, but those services terminated in September 2020.  Father and mother continued to use substances and engage in domestic violence.  Mother also threatened to abandon the children.  When the children were detained, they were dirty, had severe rashes, including open and untreated sores, and S.R.D. weighed only 12 pounds at seven months of age.

In December 2020, the juvenile court sustained the department's dependency petition, removed custody of the children, and ordered family reunification services for father and mother.  Meanwhile, S.R.D. was improving and gaining weight in her placement with maternal grandmother.  S.R.D. was born

---

[1] All further statutory references are to the Welfare and Institutions Code.

with a cleft palate, which caused some difficulty with her sucking and swallowing reflex and required surgery. Both children were referred for services.

By the three-month review report, mother had not had any contact with the department or the children. She had also given birth to another child who was removed from her care and placed in protective custody with a relative. Father made minimal progress in his case plan, but regularly attended weekly visits with the children. During the visits, the children appeared "'stunned,'" "'tense,'" and "'stiff,'" and father struggled to know how to engage with them. The department assessed the children as "sweet, happy children who need security and consistency" as well as a caregiver who can meet their physical and emotional needs.

In August 2021, at the six-month review hearing, the juvenile court terminated reunification services for mother, but continued services for father. The department originally recommended services be terminated for both parents but changed its recommendation after father participated in a juvenile dependency mediation and agreed to reengage and comply with his case plan. The children continued to participate in services including early intervention services and speech therapy. S.D. had recently been prescribed melatonin to help him sleep better, and S.R.D. had surgery to repair her cleft palate.

In September 2021, the department filed a section 388 petition alleging that father had failed to comply with the mediation agreement to meet the terms of his case plan. For example, he did not complete a single drug test or attend treatment group for the entire month of August. He did not

engage in Drug and Alcohol Services (DAS), Parenting Education, or attend his children's medical appointments. The Court Appointed Special Advocate (CASA) agreed with the department's recommendation to terminate father's reunification services because he had not been able to demonstrate that he could meet the children's needs for a "stable" and "consistent" parent.

The section 388 petition was set for a contested hearing to be combined with the 12-month review hearing. Following the contested hearing, the juvenile court found that father understood the obligations of his case plan but had not complied with the terms of his case plan in a "meaningful way." The juvenile court sustained the petition, terminated father's reunification services, and set the matter for a section 366.26 hearing.

In its report for the section 366.26 hearing, the department recommended that parental rights be terminated, and that adoption be selected as the permanent plan. The social worker wrote that S.D. and S.R.D. enjoy playing together and watching movies and have a special bond that is apparent through their interactions together. The report also stated that S.D. was strong and healthy. S.R.D., who had been underweight and small for her age, was now an active and growing toddler. Both children continued to receive services to help them meet their developmental milestones.

While the children made progress with their behavioral health services, S.D. struggled after visits with father. For example, S.D. would hit and kick, had bowel movements in his pants, and was more needy of maternal grandmother. Once the visits were reduced, S.D.'s behaviors decreased significantly. The

4

social worker wrote that S.D. and S.R.D. have endured a lot of loss and trauma in their short lives, but they have made progress and gained stability due to maternal grandmother's consistent love, nurturing, and the secure environment she has created for them. CASA submitted a memorandum in advance of the hearing and joined in the department's recommendation that parental rights be terminated, and the children be freed for adoption.

In March 2022, prior to the section 366.26 hearing, father filed a section 388 petition requesting that the juvenile court continue reunification services for another six months because he was participating in his case plan, including DAS, parenting education, and therapy to help him better parent his children.

In April 2022, at the combined hearing for father's section 388 petition and the department's 366.26 motion, father and the social worker testified. The social worker, who qualified as an expert in adoptions and permanency, testified that the children were "generally adoptable" because they are young, healthy and growing children with silly personalities. They were meeting their developmental milestones with the assistance of service providers. And in the event maternal grandmother was unable to adopt the children, the department was aware of other relatives who had expressed their desire to be an adoptive placement.

Father testified that he had engaged in services, was going to his group and individual sessions, and had not recently tested positive for substances other than marijuana. He expressed his desire to be sober and meet the needs of his children.

After hearing oral argument, the juvenile court denied father's section 388 petition, found by clear and convincing

evidence that the children were adoptable, and terminated parental rights.

*Discussion*

Father contends the juvenile court erred in terminating his parental rights and finding the children adoptable. He also contends there was a legal impediment to the adoption because there was no evidence maternal grandmother had consent from her estranged husband to adopt the children, which made it unlikely they would be adopted in a reasonable time. These contentions are without merit.

The juvenile court may terminate parental rights only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time. (§ 366.26, subd. (c)(1); *In re J.W.* (2018) 26 Cal.App.5th 263, 266-267.) A child is generally adoptable if the child's age, physical condition, mental state, and other factors make it likely that the child will be adopted within a reasonable time by either a prospective adoptive family or another family. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1526, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; *In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650.) A child is specifically adoptable "'where the child is deemed adoptable based solely on the fact that a particular family is willing to adopt him or her . . . .'" (*In re I.W.*, at p. 1526; accord, *In re J.W.*, at pp. 267-268.)

To be considered adoptable, it is not necessary that a child be in a potential adoptive home or that a prospective adoptive parent is "'waiting in the wings.'" (*In re Sarah M.*, *supra*, 22 Cal.App.4th at p. 1649; *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 223, fn. 11.) The "'likely to be adopted'" standard is a "low threshold." (*In re J.W.*, *supra*, 26 Cal.App.5th at p. 267.)

6

We review the juvenile court's finding of adoptability for substantial evidence, viewing the evidence in the light most favorable to the judgment, drawing every reasonable inference and resolving all conflicts in the evidence in favor of the juvenile court's order. (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732.) "[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 995-996.) An appellant challenging an adoptability finding has the burden of showing the evidence is insufficient to support the juvenile court's finding or order. (*In re R.C.* (2008) 169 Cal.App.4th 486, 491.)

*Substantial Evidence of Adoptability*

The juvenile court did not specify whether the children were generally or specifically adoptable, however, substantial evidence supports the juvenile court's implied finding that the children are generally adoptable. At the time of the section 366.26 hearing in April 2022, the children were just two and three years old, so their ages are not an impediment to adoption.

The social worker described them as "generally adoptable" because they were "young, healthy and growing children with silly personalities." And the department's report indicated that the likelihood the children would be adopted is "high" because they are beautiful, smart, funny, and social.

The children also continued to meet their developmental milestones. For example, S.D.'s dysregulation and behavioral issues decreased after visits with father were reduced. S.R.D.'s surgery to repair her cleft palate was successful but she would

7

require routine medical check-ups every six months, until she was 18 years old. The evidence also showed that the children were thriving in the care of maternal grandmother, who wanted to adopt them so she could provide them a stable and loving home.

Father contends the children were not generally adoptable but were instead "specifically adoptable" due to their "special and unique needs," as stated in the department's report. He also contends there was no evidence of other "approved or readily available homes" willing to adopt both children in a reasonable time.

First, as discussed above, the children's physical, behavioral, and mental health needs were improving by the time of the hearing and did not take them out of the realm of being "generally adoptable." Second, the juvenile court had evidence of additional relatives who expressed a desire to adopt the children in the event maternal grandmother was unable to do so. The willingness of the other relatives to adopt the children supports the conclusion that the children are generally adoptable. (See, e.g., *Sarah M.*, *supra*, 22 Cal.App.4th at pp. 1649-1650.) Third, the department was not required to have an "approved" or "readily available home[]" in order for the children to be considered generally adoptable. All that is required is clear and convincing evidence of the *likelihood* that adoption will be realized in a reasonable time. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1313; *In re Sarah M.*, at pp. 1649-1650.)

The record in this case supports such a conclusion.

Father next contends the juvenile court "had a duty to consider whether there was a legal impediment to adoption"

because there was evidence that maternal grandmother and her husband were separated.

"'When a child is deemed adoptable only because a particular caretaker is willing to adopt, the analysis shifts from evaluating the characteristics of the child to whether there is any legal impediment to the prospective adoptive parent's adoption and whether he or she is able to meet the needs of the child. [Citation]' [Citation.]." (*In re J.W.*, *supra*, 26 Cal.App.5th at pp. 267-268.) For example, a married, but separated person may not adopt a child without the consent of the spouse. (*In re Sarah M.*, *supra*, 22 Cal.App.4th at p. 1650, citing Fam. Code, § 8603.)

Here, the juvenile court "did not have a duty . . . to evaluate whether there was a legal impediment to adoption by [maternal grandmother]" because the social worker did not opine, and the juvenile court did not find the children were adoptable based *solely* on maternal grandmother's willingness to adopt them. (*In re G.M.* (2010) 181 Cal.App.4th 552, 564.) Moreover, if a child is found to be generally adoptable, there is no need to inquire into the suitability of a particular placement. (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1061-1062; *In re A.A.*, *supra*, 167 Cal.App.4th at p. 1315.)

Even so, father's challenge to the juvenile court's adoptability finding based on a legal impediment was not properly preserved for appellate purposes. (See *In re G.M.*, *supra*, 181 Cal.App.4th at pp. 563-564, citing *In re S.B.* (2004) 32 Cal.4th 1287, 1293 & *In re R.C.*, *supra*, 169 Cal.App.4th at p. 493, fn. 2.) Father did not object to the adequacy of the department's assessment, nor did he question the social worker or maternal grandmother as to whether she in fact had her husband's consent to adopt the children. This might be a concern were the children

only specifically adoptable.  However, as we have explained, substantial evidence supports a finding, by clear and convincing evidence, that the children are generally adoptable.

Accordingly, the juvenile court did not err in terminating father's parental rights and ordering adoption as the appropriate permanent plan.

## DISPOSITION

The judgment (order terminating parental rights and selecting adoption as the permanent plan) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

10

Margaret Johnson, Judge
Superior Court County of San Luis Obispo

_____


Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.


Rita L. Neal, County Counsel, Debra K. Barriger, Deputy County Counsel, for Plaintiff and Respondent.